# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>v.<br><br>JOSEPH R. EARLE, JR., BARRY D. REAGH, WILLIAM CLAYTON, FRANCIS T. DUDLEY, STEVEN E. BRYANT, UPPER STREET MARKETING, INC., and PROJECT GROWTH INTERNATIONAL, INC.,<br><br>                              Defendants. | Case No.: 3:22-cv-01914-H-MDD<br><br>**ORDER DENYING DEFENDANT FRANCIS T. DUDLEY'S MOTION TO DISMISS**<br><br>[Doc. No. 22.] |

On December 5, 2022, Plaintiff Securities and Exchange Commission ("Plaintiff") filed an amended complaint ("FAC") alleging Defendants Joseph R. Earle, Jr., Barry D. Reagh, William Clayton, Francis T. Dudley, Steven E. Bryant, Upper Street Marketing, Inc., and Project Growth International, Inc. had violated federal securities laws. (Doc. No. 3, FAC). On February 15, 2023, Defendant Francis T. Dudley filed the present motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 22.) On March 27, 2023, Plaintiff filed an opposition to Defendant's motion. (Doc. No. 43.) On April 5, 2023, Defendant filed a reply. (Doc. No.

50.)  For the reasons that follow, the Court denies Defendant's motion to dismiss.

## BACKGROUND

The following allegations are taken from Plaintiff's FAC.  This action is brought against Defendants, collectively, for violations of Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder as well as Sections 5(a), 5(c), 17(a), and 17(b) of the Securities Act of 1933 (the "Securities Act").  (FAC ¶¶ 125-151).  This action is brought against Defendant Francis T. Dudley for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as Section 17(b) of the Securities Act.  (FAC ¶¶ 125-128, 149-152).

In Spring 2018, Defendant Earle became the chief financial officer of Growing Springs, LLC, a company that sold liquid conversion technology to cannabis and hemp growers to help them achieve higher crop yields.  (FAC ¶ 26.)  In July 2018, Defendant Earle met with G.M., the then chief executive officer of Defendant Upper Street Marketing, Inc. (UPPR), to discuss merging their companies and raising capital to expand business.  (FAC ¶¶ 27-28.)  G.M. introduced Defendant Earle to Defendant Reagh, who alongside G.M., jointly controlled UPPR.  (FAC ¶ 29.)  In August 2018, Defendant Earle formed Growing Springs Holdings Corporation ("GSHC"), which acquired the assets of Growing Springs, LLC.  (FAC ¶ 30.)  In October 2018, Defendant Earle and G.M. entered into an agreement between GSHC and UPPR, under which GSHC would receive shares of UPPR.  (FAC ¶ 31.)  This agreement, alongside another agreement of common stock between Defendant Earle and Tenzi made Defendant Earle the majority shareholder of UPPR, and Defendant Earle took over as president and CEO of UPPR.  (FAC ¶ 32.)

Around the same time that UPPR and GSHC entered into this agreement, Defendants Earle and Reagh agreed to use UPPR for a pump-and-dump scheme.  (FAC ¶¶ 33-35.)  As alleged, this scheme consisted of four parts.  First, Defendant Reagh had D.R. and Defendant Clayton deposit UPPR shares into a brokerage account based on false and misleading DSR forms.  (FAC ¶ 36.)  These DSR forms hid the material fact that Defendant Reagh was the beneficial owner of the shares and that Defendant Reagh would be

coordinating many, if not all, of the sales executed in the brokerage accounts. (FAC ¶ 36.) Second, Defendant Earle conducted an unregistered and purportedly private offering of UPPR stock. (FAC ¶ 37.) Third, Defendants UPPR, Earle, Reagh, and Dudley agreed to conduct a promotional campaign to drive up the price of UPPR's publicly traded stock. (FAC ¶ 38.) Fourth, when the price of UPPR stock was artificially inflated, Defendants Reagh and Clayton sold their UPPR shares for a substantial profit. (FAC ¶ 39.)

The following allegations taken from the FAC deal specifically with Defendant Francis T. Dudley's involvement.

In January 2019, after UPPR became receiving funds from the private offering, Defendant Earle hired Defendant Dudley, the owner of Venado Media, LLC, to assist with the promotional campaign. (FAC ¶ 69.) Defendant Dudley was the managing member and control person of Venado Media. (FAC ¶ 124.) In February 2019, Defendant Dudley sent a budget proposal for the promotional campaign, which included three to four research reports, re-releasing UPPR's press releases, the use of investor channels, and the use of display banners on financial websites. (FAC ¶ 70.) Between January and June 2019, Defendant Dudley's company, Venado Media, distributed approximately five research reports through two of Venado Media's labels, TheOTCReporter.com and DiscoveryStocks.com. (FAC ¶ 82.) Defendant Dudley reviewed each research report. (FAC ¶ 84.) Plaintiff alleges that the research reports "falsely and misleadingly stated that the compensation for the research reports came from Venado Media, LLC" when in fact, UPPR, the company whose shares were promoted in the research reports, paid Venado Media to write the reports. (FAC ¶ 86.) The complaint also alleges that Defendant Dudley "knew, or was reckless and negligent for not knowing, that Reagh was the beneficial owner of UPPR stock at the time Reagh helped pay for the research reports" and that Defendant Dudley "knew, or was reckless and negligent for not knowing, that Reagh intended to sell . . . some of his UPPR shares to the public once Dudley disseminated the favorable research reports." (FAC ¶¶ 87-88.) Defendant Dudley did not disclose this information. (FAC ¶ 88.)

Plaintiff's amended complaint, filed on December 5, 2022, alleges that by falsely and misleadingly stating the source of compensation for the promotional research reports, Defendant Dudley violated of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as Section 17(b) of the Securities Act. (FAC ¶¶ 125-128, 149-152). By the present motion, Defendant Dudley moves to dismiss Plaintiff's FAC for failure to state a claim upon which relief can be granted. (Doc. No. 22.)

## DISCUSSION

### I.     Legal Standard

#### A. Rule 12(b)(6)

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241–42 (9th Cir. 2011). In reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead enough facts "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). Courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). "Dismissal under Rule

12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).

### B. Rule 9(b)

A complaint stating claims under Section 10(b) and Rule 10b-5 must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Prodanova v. H.C. Wainwright & Co., LLC, 993 F.3d 1097, 1106 (9th Cir. 2021). Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In other words, "the plaintiff must allege the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." United States ex rel. Swoben v. United HealthCare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016). Under Federal Rule of Civil Procedure 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## II.  Analysis

### A. Section 10(b) of the Exchange Act and Rule 10b-5(b)

The SEC promulgated Rule 10b-5 under Section 10(b) of the Exchange Act. Rule 10b-5(b) makes it unlawful for a person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5. "A violation of Section 10(b) and Rule 10b-5 is established if the defendant (1) made a material misrepresentation or omission (2) in connection with the purchase of a sale or security (3) with scienter (4) in interstate commerce." S.E.C. v. Platforms Wireless Intern. Corp., 617 F.3d 1072, 1092 (9th Cir. 2010). Defendant contends that Plaintiff has failed to allege the first three elements with sufficient particularity to establish a cause of action under Rule 10b-5(b). (Doc. No. 22 at 11-18.) The Court addresses each in turn.

/ / /

/ / /

### 1. Whether Defendant Had a Duty to Disclose

Rule 10b-5(b) creates a cause of action for either a "material misrepresentation" or an "omission." Id. "The misstatement or omission complained of must be misleading; in the case of an omission, silence, absent a duty to disclose, is not misleading under Rule 10b-5." Young v. Dreisbach, 182 Fed. App'x. 714, 718 (9th Cir. 2006) (internal quotations and citations omitted); see also S.E.C. v. Hui Feng, 935 F.3d 721, 734 (9th Cir. 2019) ("A fiduciary duty to disclose certain information renders an omission of that information misleading.") To be misleading, a statement or omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002) (citing McCormick v. The Fund American Cos., 26 F.3d 869, 880 (9th Cir. 1994)).

Defendant contends that Plaintiff's complaint alleges that Defendant violated Rule 10b-5 by omitting certain information, and that Plaintiff was therefore required to allege that Defendant owed a duty to disclose the omitted information in order to state a cause of action. (Doc. No. 22 at 11-13.) In particular, Defendant argues that Plaintiff alleges that Defendant violated Rule 10b-5 because Defendant "omitted to disclose that UPPR and Reagh had paid Dudley and Venado for the research reports" and "that Reagh was the beneficial owner of UPPR stock." (Doc. No. 22 at 12-13.) Defendant argues that Plaintiff fails to allege that Defendant "owed a duty to disclose the source of the compensation paid to him for the research reports." (Doc. No. 22 at 11.) Plaintiff asserts that the complaint alleges not that Defendant made actionable omissions, but rather, that Defendant "made affirmative false and misleading statements." (Doc. No. 43 at 9.)

Plaintiff alleges that the research reports "falsely and misleadingly stated that the compensation for the research reports came from 'Venado Media, LLC.'" (FAC ¶ 86.) Plaintiff alleges that "[t]he stock research reports that Dudley drafted, and caused others to draft, were false and misleading. They claimed that those reports had been paid for by Dudley's own media company when, in fact, the payment for these purportedly independent research reports about UPPR's stock had actually come from UPPR and

Reagh." (FAC ¶ 9.) To support his theory that Plaintiff's allegations sound in the omission of material information, rather than in the making of misleading statements, Defendant points to Plaintiff's allegations that "[t]he research reports did not disclose that UPPR and Reagh had paid Dudley and Venado Media approximately $136,000 to write the research reports" and that Dudley knew that "Reagh was the beneficial owner of UPPR stock at the time Reagh helped pay for the research reports" but "did not disclose any of this material information in the three research reports." (FAC ¶¶ 86-88.) Plaintiff argues that these statements were made to explain why the statements Defendant affirmatively made were false, as is required by Rule 9(b). (Doc. No. 43 at 10); See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (finding that Rule 9(b) mandates that the plaintiff "set forth what is false or misleading about a statement, and why it is false"). Plaintiff has identified affirmative statements by Defendant that it contends are materially misleading. Because Plaintiff's complaint sufficiently alleges that Defendant made affirmative misrepresentations, rather than omissions, Plaintiff was not required to allege a duty to disclose.

### 2. Whether The Complaint Sufficiently Pleads Materiality

Defendant next contends that Plaintiff has not sufficiently plead that the omitted information is material. (Doc. No. 22 at 13.) A complaint must allege both that the statement or omission is misleading and that it is material. See In re Alphabet, Inc. Securities Litigation, 1 F.4th 687, 700 (9th Cir. 2021). Section 10(b) and Rule 10b-5 only require disclosure "when necessary 'to make . . . statements made, in light of the circumstances under which they were made, not misleading.'" Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44 (2011) (quoting 17 C.F.R. § 240.10b-5(b)). "The question of materiality, it is universally agreed, is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor." TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 445 (1976). "The materiality of the misrepresentation or an omission depends upon whether there is a substantial likelihood that it would have been viewed by the reasonable investor as having significantly altered the total mix of information made

available for the purpose of decisionmaking by stockholders concerning their investments." Retail Wholesale & Department Store Union Local 338 Retirement Fund v. Hewlett-Packard Co., 845 F.3d 1268, 1274 (9th Cir. 2017) (internal quotation marks and citations omitted). "The inquiry into materiality is fact-specific, and requires delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him." In re Alphabet, Inc. Securities Litigation, 1 F.4th 687, 700 (9th Cir. 2021) (internal quotation marks and citations omitted). The Ninth Circuit notes that whether a statement or omission is material is typically a determination "for the trier of fact." Fecht v. Price Co., 70 F.3d 1078, 1080-81 (9th Cir. 1987); see also Retail Wholesale, 845 F.3d at 1274 (noting that generally, materiality is "an issue of mixed fact and law, best left to the fact-finder"). As a result, resolving whether a statement or omission is misleading or material as a matter of law is generally only appropriate where the materiality of a statement is "so obvious that reasonable minds [could] not differ." Fecht v. Price Co., 70 F.3d 1078, 1081 (9th Cir. 1995) (quoting Durning v. First Boston Corp., 815 F.2d 1265, 1268 (9th Cir. 1987)).

Defendant argues that "it is not the source of compensation that is material," but rather "the fact that the words Mr. Dudley disseminated were 'in reality . . . bought and paid for.'" (Doc. No. 22 at 14) (citing U.S. v. Amick, 439 F.2d 351, 365 (7th Cir. 1971)). Plaintiff alleges that the information is material because a "reasonable investor would have considered it important in making an investment decision to know that UPPR, the company whose shares Venado Media promoted in the research reports, had paid Venado Media to write them." (FAC ¶ 86.) Plaintiff's allegations are sufficient to state a claim under Section 10(b) and Rule 10b-5. Plaintiff has identified allegedly material misstatements. It is plausible that a reasonable investor would have considered the source of compensation to be material, especially where the company whose stock was promoted in the reports was the one paying for the research reports. The Court cannot determine at this time – as a matter of law – that the misrepresentations regarding the source of compensation did not make the statements misleading to a reasonable investor. Given the fact-intensive nature

8

3:22-cv-01914-H-MDD

of these inquiries, Defendant's arguments regarding the materiality of the alleged statements are better suited to a motion for summary judgment when the record is more fully developed.

### 3. Whether The Complaint Sufficiently Pleads That Defendant's Conduct Was in Connection with The Purchase or Sale of Securities

To state a claim under Section 10(b) and Rule 10b-5, the Plaintiff must allege that the material misrepresentation or omission was made "in connection with" the purchase or sale of securities. See Platforms Wireless Intern. Corp., 617 F.3d at 1092. "[T]he in connection with requirement is met if the fraud alleged somehow touches upon or has some nexus with any securities transaction." S.E.C. v. Rana Research, Inc., 8 F.3d 1358, 1362 (9th Cir. 1993) (internal quotation marks and citations omitted). "Where the fraud alleged involves public dissemination in a document such as a press release, annual report, investment prospectus or other such document on which an investor would presumably rely, the 'in connection with' requirement is generally met by proof of the means of dissemination and the materiality of the misrepresentation or omission." Id.

Defendant argues that Defendant's alleged omission could not be conduct taken "in connection with" the sale of a security "because the information had no bearing on the value of UPPR stock." (Doc. No. 22 at 16.) Further, Defendant contends that the omission of information "was not reasonably calculated to influence the average investor." (Doc. No. 22 at 16.) Defendant's arguments are unpersuasive. Defendant cites Rana Research, to support his arguments, but Rana Research does not stand for the proposition that information must have a bearing on the value of stock in order for it to be considered conduct taken in connection with the sale of a security. See 8 F.3d at 1362. In fact, in Rana Research, Inc., the Ninth Circuit notes that "in connection with" should be interpreted "as broad[ly] and flexibl[y] as is necessary to accomplish the statute's purpose of protecting investors." Rana Research, Inc., 8 F.3d at 1362.

Plaintiff alleges that Defendant distributed approximately five research reports "on or about January 16, January 22, March 11, and June 3, 2019" that "discussed UPPR's

business plans and prospects in glowing terms." (FAC ¶¶ 82-83.) Plaintiff alleges that these research reports contained material misrepresentations that "falsely and misleadingly stated" the source of compensation for the reports and that Defendant "disseminated the favorable research reports to the public." (FAC ¶¶ 86-88.) Plaintiff alleges that Defendant proposed the promotional campaign, which included distributing research reports through Facebook ads, re-releasing UPPR's press releases, using investor channels with active investors, and placing banners on targeted financial websites. (FAC ¶ 70.) The alleged misrepresentations were on documents, such as research reports, "on which an investor would presumably rely" and the Court cannot say as a matter of law that the alleged misrepresentations were not material. See Rana Research, Inc., 8 F.3d at 1362. The Court concludes that Plaintiff plead sufficient facts to satisfy the "in connection with" requirement.

### 4. Whether The Complaint Sufficiently Pleads Scienter

"To establish a violation of Section 10(b) and Rule 10b-5, the SEC is required to show that there has been a misstatement or omission of material fact, made with scienter." Gebhart v. SEC, 595 F.3d 1034, 1040 (9th Cir. 2010) (internal quotation marks and citations omitted). Plaintiff may establish scienter by showing that Defendant either knew the statement was false or that Defendant was reckless as to the truth or falsity of the statement. Id. "Recklessness satisfies the scienter requirement only 'to the extent that it reflects some degree of intentional or conscious misconduct.'" SEC v. Rubera, 350 F.3d 1084, 1094-95 (9th Cir. 2003) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 977 (9th Cir. 1999)). Where the SEC is the plaintiff, "the allegations must only pass muster under Fed. R. Civ. P. 9(b)" and therefore "[s]cienter may be . . . averred generally." S.E.C. v. Small Cap Research Group, Inc., 226 Fed. App'x. 656, 657 (9th Cir. 2007); See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.") Fed. R. Civ. P. 9(b). The Ninth Circuit concluded that a plaintiff can meet the Rule 9(b) pleading requirements for scienter

"simply by saying that scienter existed." In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547 (9th Cir. 1994).[1]

Defendant contends Plaintiff has failed to supply any facts indicating how Defendant would have held the requisite knowledge or scienter when omitting the information from research reports. (Doc. No. 35 at 17.) Defendant cites to S.E.C. v. Dougherty, for the proposition that the complaint "must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." No. 19-cv-769-JLS-KSC, 2020 WL 13539068, at *8 (S.D. Cal. Feb. 27, 2020) (quoting Ronconi v. Larkin, 253 F.3d 423, 432 (9th Cir. 1990)). As Ronconi v. Larkin makes clear, this is the pleading requirement for a private securities plaintiff under the PSLRA. 253 F.3d at 432. As discussed above, the pleading requirement for scienter for the SEC differs from that for private plaintiffs under the PSLRA. Thus, Defendant's reliance on this standard in the present matter is incorrect and the Court will analyze Plaintiff's allegations based on the requirements of Rule 9(b).

Plaintiff's complaint contains numerous statements outlining Defendant's role in making, or approving, the allegedly false and misleading statements. For example, Plaintiff alleges that Defendant drafted, and caused others to draft, stock research reports "claim[ing] that those reports had been paid for by Dudley's own media company when, in fact, the payment for these purportedly independent research reports about UPPR's stock had actually come from UPPR and Reagh." (FAC ¶ 9.) Plaintiff alleges that "Dudley reviewed each of the research reports" and that "Dudley knew, or was reckless and negligent for not knowing, that Reagh was the beneficial owner of UPPR stock at the time Reagh helped pay for the research reports." (FAC ¶¶ 84, 87.) Plaintiff further alleges that Dudley "knew, or was reckless and negligent for not knowing, that Reagh intended to sell,

---

[1] With respect to private litigants, the Private Securities Litigation Reform Act ("PSLRA") "effectively overturned the Ninth Circuit's lenient scienter pleading requirement enunciated in In re GlenFed." S.E.C. v. Leslie, No. C 07-3444, 2008 WL 3876169, at *6 (N.D. Cal. Aug. 19, 2008) (internal citations omitted). "However, the PSLRA does not apply to actions brought by the SEC." Id. Accordingly, the lenient scienter standard in In re GlenFed applies to the present case.

and to direct others to sell, some of his UPPR shares to the public once Dudley disseminated the favorable research reports to the public." (FAC ¶ 88.) Plaintiff specifies that Defendant "was the maker of these false and misleading statements because he was the managing member and control person of Venado Media, and the person who reviewed and approved the research reports that were disseminated to the public." (FAC ¶ 124). Plaintiff has met the pleading requirements for scienter under Rule 9(b).

**B. Scheme Liability under Rules 10b-5(a) and (c)**

Defendant also moves to dismiss the complaint on the ground that it fails to adequately plead scheme liability under Rule 10b-5(a) and 10b-5(c). (Doc. No. 22 at 19-22.) Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) make it unlawful, in connection with the purchase or sale of a security, "to employ any device, scheme, or artifice to defraud" or "to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit." 17 C.F.R. § 240.10b-5(a), (c). In <u>Lorenzo v. Securities and Exchange Commission</u>, the Supreme Court concluded that "dissemination of false or misleading statements with intent to defraud" falls within the scope of Rules 10b-5(a) and (c). 139 S.Ct. 1094, 1100 (2019). The Court noted that the "provisions capture a wide range of conduct." <u>Id.</u> at 1101.

Defendant contends that Plaintiff's "scheme liability claim fails for many of the same reasons as the Rule 10b-5(b) claim discussed above." (Doc. No. 22 at 19.) Namely, Defendant contends that Plaintiff's scheme liability claim fails because Plaintiff has not adequately plead scienter, because the alleged omissions were not in connection with the purchase or sale of a security, and because Defendant owed no duty to disclose the information. (Doc. No. 22 at 20-21.) As discussed above, the complaint adequately alleges that Defendant made material misrepresentations regarding the source of compensation for the research reports and that these misrepresentations were made in connection with the purchase or sale of a security. Further, the complaint adequately pleads scienter. For the same reasons that the complaint adequately alleges a Rule 10b-5(b) violation, the complaint adequately alleges scheme liability under Rules 10b-5(a) and (c).

Defendant also argues that a "recitation of allegations of a violation of Rule 10b-5(b), without 'something extra,' would not satisfy Rule 10b-5(a) or (c). (Doc. No. 22 at 21) (citing SEC v. Rio Tinto PLC, 41 F. 4th 47, 54 (2d Cir. 2022)). Defendant argues that the complaint fails to provide allegations of the "something extra" to state a cause of action for scheme liability. (Doc. No. 22 at 21-22). The Ninth Circuit has not adopted the "something extra" requirement that the Second Circuit imposed in Rio Tinto. In Lorenzo, the Supreme Court recognized the "considerable overlap" between the subsections of Rule 10b-5 and found that Lorenzo's conduct violated Rules 10b-5(a) and (c) as well as Rule 10b-5(b). 139 S. Ct. at 1100-03. The Ninth Circuit is clear that the "argument that Rule 10b-5(a) and (c) claims cannot overlap with Rule 10b-5(b) statement liability claims is foreclosed by Lorenzo." In re Alphabet, Inc. Securities Litigation, 1 F. 4th 687, 709 (9th Cir. 2021). Plaintiff's complaint adequately alleges that Defendant disseminated misleading statements with the intent to defraud by stating that the compensation for the research reports came from Venado Media, LLC. (FAC ¶¶ 82-86). Plaintiff has adequately plead a cause of action under Rules 10b-5(a) and (c) for scheme liability.

### C. Section 17(b) of the Securities Act

Finally, Defendant argues that Plaintiff has failed to state a claim under Section 17(b) of the Securities Act. (Doc. No. 22 at 22-24.) Section 17(b) of the Securities Act makes it unlawful to:

> Publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.

15 U.S.C. section 77q(b). The question before the Court is whether Section 17(b) requires

disclosure of the source of compensation or whether it is sufficient that Defendant disclosed that he was a promoter and how much he was compensated for his promotions. (Doc. No. 22 at 22-23). The Court concludes that the plain language of the statute requires disclosure of the source of consideration when such consideration is received or to be received from an issuer, underwriter, or dealer.

Defendant cites to SEC v. Recycle Tech, Inc., to support his argument that "Section 17(b) does not require affirmative disclosure of the source of the consideration received." No. 12-cv-21656, 2013 WL 12063952, at *8 (S.D. Fla. Sept. 26, 2013)). Defendant asserts that he complied with Section 17(b) by "disclosing that he was a promoter and how much he was paid for his promotions" because these disclosures advised readers that Defendant's opinions were "bought and paid for." (Doc. No. 22 at 23) (citing Amick, 439 F.2d at 365)).

Recycle Tech is an out-of-district case decided in the Southern District of Florida and is not binding on this Court. In Recycle Tech, the court acknowledged that "[t]he specific issue here – i.e., whether misidentifying the source of the consideration received violates Section 17(b)'s requirement of 'fully disclosing the receipt . . . of such consideration and the amount thereof' – appears to be one of first impression." 2013 WL 12063952, at *8. The court concluded that the "plain language" of the statute "does not require affirmative disclosure of the source of the consideration received." Id. (citing U.S. v. Wenger, 427 F.3d 840, 849-50 (10th Cir. 2005)). This conclusion has not been adopted by the Ninth Circuit and this Court disagrees.

Section 17(b) specifies a small group of people – an issuer, underwriter, or dealer – from whom the receipt of consideration must be disclosed. Where consideration is received or to be received from an issuer, underwriter, or dealer, Section 17(b) mandates the full disclosure "of *such* consideration and the amount thereof." (emphasis added). This plain reading of the statute is bolstered by the Congressional intent of Section 17(b). "Section 17(b) 'is particularly designed to meet the evils of the 'tipster sheet' as well as articles in newspaper or periodicals that purport to give an unbiased opinion but which opinions in reality are bought and paid for.'" U.S. v. Amick, 439 F.2d 351, 365 (7th Cir.

1971) (quoting Committee on Interstate and Foreign Commerce. H.R. Rep. No. 85, 73d Cong., 1st Sess. (1933)). Congress intended this disclosure requirement to counter articles and periodicals that misleadingly purport to give an unbiased opinion. The fact that consideration is received from an issuer, underwriter, or dealer – someone with "a financial interest in fraudulently presenting promotional literature as objective reporting" – goes to the heart of bias. See S.E.C. v. Wall Street Pub. Institute, Inc., 851 F.2d 365, 369 (D.C. Cir. 1988).

The plain language of the statute requires that the source of consideration is disclosed when it is received from an issuer, underwriter, or dealer. Plaintiff alleges that "UPPR, the company whose shares Venado Media promoted in the research reports, had paid Venado Media to write [the reports.]" (FAC ¶ 86.) Plaintiff further alleges that despite the fact that UPPR paid Venado Media to author the reports, the research reports merely stated that compensation for the reports came from Venado Media. (FAC ¶ 86.) In doing so, the research reports misrepresented the source of consideration. (FAC ¶ 86.) Because this misrepresentation runs afoul of the plain language requirements of Section 17(b), the Court concludes that Plaintiff has sufficiently plead a violation of Section 17(b).

## CONCLUSION

For the reasons above, the Court denies Defendant's motion to dismiss Plaintiff's FAC. Defendant must file an answer to the FAC within thirty (30) days of the date of this Order.

**IT IS SO ORDERED.**

DATED: April 10, 2023

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT