# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH R. EARLE, JR., BARRY D. REAGH, WILLIAM CLAYTON, FRANCIS T. DUDLEY, STEVEN E. BRYANT, UPPER STREET MARKETING, INC., and PROJECT GROWTH INTERNATIONAL, INC.,<br><br>Defendants. | Case No.: 3:22-cv-01914-H-SBC<br><br>**ORDER GRANTING PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION IN LIMINE TO ADMIT RECORDED STATEMENTS OF DEFENDANTS JOSEPH R. EARLE, JR. AND BARRY D. REAGH**<br><br>[Doc. Nos. 106, 120.] |

On June 27, 2024, Plaintiff Securities and Exchange Commission ("SEC") filed a motion in limine to admit recorded statements of Defendants Joseph R. Earle, Jr. ("Earle") and Barry D. Reagh ("Reagh"). (Doc. Nos. 106, 120.) On July 15, 2024, Defendants Earle, Reagh, and William Clayton ("Clayton") filed an opposition to the motion in limine. (Doc. Nos. 110, 116.) On July 22, 2024, the SEC filed a reply. (Doc. No. 117.) A hearing on the SEC's motion is currently scheduled for Monday, September 9, 2024, at 10:30 a.m. Pacific Time. (Doc. No. 123.) The Court, pursuant to its discretion under Civil Local Rule 7.1(d)(1), determines the matter is appropriate for resolution without oral argument,

submits the motion on the parties' papers, and vacates the hearing. For the reasons below, the Court grants the SEC's motion in limine to admit recorded statements of Earle and Reagh.

## I. ANALYSIS

The SEC seeks an order from the Court allowing the SEC to admit four undercover recordings of a confidential human source working for the Federal Bureau of Investigations ("FBI"). (Doc. No. 106-1 at 7.) The SEC alleges that the confidential human source consensually recorded his conversations with Earle and Reagh, where they made statements in person and during recorded telephone calls that the SEC intends to use against Earle, Reagh, and Clayton at trial. (Id.) The SEC argues that these consensually recorded statements should be admitted because: (1) the recorded statements are relevant to the SEC's fraud claims against Earle, Reagh, and Clayton; (2) the recorded statements are not hearsay; (3) the recorded statements were not obtained in violation of federal law; and (4) the SEC can properly authenticate the recorded statements. (Id. at 14–19.) Defendants do not dispute relevancy and that the recorded statements are not hearsay. Instead, Defendants argue that the recorded statements should be excluded because: (1) Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20 ("Title III"), precludes submission of the recorded statements at trial; (2) the Court should bar testimony from any FBI personnel because they were not disclosed as potential witnesses; and (3) the recorded statements would be unduly prejudicial. (Doc. No. 110 at 6–15.) The Court addresses each argument in turn below.

### A. Relevance

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. The SEC argues that the consensually recorded statements are key pieces of evidence in support the SEC's fraud claims against Earle, Reagh, and Clayton. (Doc. No. 106-1 at 14.) Upon review of the transcripts provided to the Court, the Court agrees with the SEC. Because the recorded statements have a tendency to make a fact of consequence more or less probable than it

would be without the evidence, they are relevant. See Fed. R. Evid. 401.

B. **Hearsay**

"Hearsay" is defined as a declarant's out of court statement used to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay evidence is generally inadmissible, unless subject to certain exceptions. Fed. R. Evid. 802. Here, Earle and Reagh's own statements are admissible under Federal Rule of Evidence 802, which excludes from the definition of hearsay a party's own statements. See United States v. Matlock, 415 U.S. 164, 172 (1974) (a party's "own out of-court admissions . . . surmount all objections based on the hearsay"). As for the statements made to Earle and Reagh on the recordings, Earle and Reagh participated in the calls and meetings and nothing in the transcripts provided to the Court suggests that they did not hear and agree with these statements. Thus, these adoptive admissions are admissible under Rule 801(d)(2)(B). Fed. R. Evid. 801(d)(2)(B); see United States v. Monks, 774 F.2d 945, 950 (9th Cir. 1985) (adoptive admissions may be presented to the jury where "sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant did actually hear, understand and accede to the statement"). Lastly, Earle and Reagh's statements are admissible against each other and against Clayton under Rule 801(d)(2)(E) because they were made during and in furtherance of a conspiracy or common enterprise alleged in the complaint. See generally Bourjaily v. United States, 483 U.S. 171, 175 (1987). Accordingly, the recorded statements are not hearsay.

C. **Authenticity**

Next, the SEC argues that it can properly authenticate the recordings. (Doc. No. 106-1 at 17–19.) "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "In other words, the party offering the evidence must make a prima facie showing of authenticity 'so that a reasonable juror could find in favor of authenticity or identification.'" United States v. Gadson, 763 F.3d 1189, 1203 (9th Cir. 2014) (quoting United States v. Black, 767 F.2d 1334, 1342 (9th

1  Cir. 1985)).  This is not a heavy burden.  See United States v. Recio, 884 F.3d 230,
2  236–37 (4th Cir. 2018) (Rule 901 burden "not high"); United States v. Ceballos, 789
3  F.3d 607, 618 (5th Cir. 2015) (Rule 901 burden "low").  In order for the SEC to meet this
4  burden, the Court must be satisfied that the SEC will be able to demonstrate that "the
5  recording is accurate, authentic, and generally trustworthy."  United States v. Panaro, 266
6  F.3d 939, 951 (9th Cir. 2001) (quotation omitted).  That foundation may be proved through
7  extrinsic evidence, such as a witness who testifies that the recording "is what it purports to
8  be, or is a true and accurate copy of the original."  Gadson, 763 F.3d at 1203–04; see also
9  United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995), opinion amended on
10 denial of reh'g, 98 F.3d 1100 (9th Cir. 1996) (foundation for admitting recording "is done
11 by proving a connection between the evidence and the party against whom the evidence is
12 admitted and can be done by both direct and circumstantial evidence").  "A recorded
13 conversation is generally admissible unless . . . unintelligible portions are so substantial
14 that the recording as a whole is untrustworthy."  United States v. Rrapi, 175 F.3d 742, 746
15 (9th Cir. 1999).  Moreover, "[t]here is no requirement that the tapes be put in evidence
16 through the person wearing the recorder, or for that matter, through a contemporaneous
17 witness to the recorded conversations."  United States v. Collins, 715 F.3d 1032, 1036 (7th
18 Cir. 2013) (quoting United States v. Fuentes, 563 F.2d 527, 532 (2d Cir. 1977)).

19       Here, the SEC argues that it can admit the recordings through either the testimony
20 of the confidential human informant or through an FBI agent who directed and supervised
21 the recordings and can thus lay the foundation for authentication.  (Doc. No. 106-1 at 19.)
22 The SEC further argues that the FBI agent can equally authenticate the recorded calls on
23 which the confidential human informant participated without the agent by explaining the
24 systematic manner the FBI used to collect the recordings, and the confidential human
25 informant's consistent adherence to the FBI's instructions regarding collecting the
26 recordings.  (Id.)  Accordingly, the SEC has met its prima facie showing of authenticity.
27 See, e.g., Collins, 715 F.3d at 1035–37 (district court properly admitted recordings where
28 informant recorded defendant on his own and then shipped tapes to the government even

though the informant "did not testify at trial and . . . no government agents were present when [he] made the recordings"); United States v. Correa, 519 F. App'x 602, 603 (11th Cir. 2013) (district court properly admitted videotape where FBI agent established foundation).

### D. Title III of the Omnibus Crime Control and Safe Streets Act of 1968

The SEC next argues that the four recordings were lawfully obtained under federal law. (Doc. No. 106-1 at 15–16.) Defendants argue that the disclosure of the recordings by the FBI to the SEC violated Title III and thus, Section 2515 of Title III prohibits their use at trial. (Doc. No. 110 at 6–11.)

Title III established a "comprehensive scheme for the regulation of wiretapping and electronic surveillance." Gelbard v. United States, 408 U.S. 41, 46 (1972). But under Section 2511(2)(c), "[i]t shall not be unlawful . . . for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). Moreover, the Ninth Circuit has also held that "one party's consent is sufficient justification for electronic surveillance and no prior judicial authorization is required." United States v. Testa, 548 F.2d 847, 855 (9th Cir. 1977) (citing United States v. Ryan, 548 F.2d 782, 787 (9th Cir. 1976); Holmes v. Burr, 486 F.2d 55 (9th Cir. 1973)); see also United States v. Luis, 537 F. App'x 752, 753 (9th Cir. 2013) (recordings made by a cooperating informant who was a party to the communication are "specifically permitted" under Title III); United States v. Daniel, 667 F.2d 783, 785 (9th Cir. 1982) ("no basis for excluding" information "by federal officers in violation of state law but in compliance with § 2511").

Section 2515 of Title III precludes the use of recordings as evidence "if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515. But it is clear that "the provisions of [Section 2515] do not preclude the use of intercepted communications when one of the parties thereto consented to the interception." United States v. Puchi, 441 F.2d 697, 700 (9th Cir. 1971). "[I]f, as in the case of most interceptions

of communications by or with the consent of a party, the interception does not require a warrant to be lawful, Title III does not restrict its use. . . . Section 2511 exempts the conversations covered by it from the entirety of Title III." In re High Fructose Corn Syrup Antitrust Litig., 216 F.3d 621, 626 (7th Cir. 2000); see also United States v. Hammond, 286 F.3d 189, 193 (4th Cir. 2002) ("the FBI was free to use the intercepted conversations once they were excepted under either § 2510(5)(a)(1) or § 2511(2)(c)").

Here, it is undisputed that the confidential human informant was a party to the recorded conversations and gave prior consent to record them. (Doc. No. 106-1 at 9.) Thus, the recordings are lawful under Section 2511(2)(c). As for Defendants' contention that the FBI's disclosure of the recordings to the SEC violated Title III and thus, must be precluded under Section 2515, Defendants fail to identify any provision of Title III that prohibits either the FBI from providing the recordings to the SEC or that prohibits the introduction of the recordings at trial. Indeed, Title III expressly prohibits disclosure or use of only those communications obtained "in violation of" Section 2511(1) or of disclosure of recordings obtained in connection with a criminal investigation with the intent of obstructing, impeding, or interfering with a criminal investigation. 18 U.S.C. §§ 2511(1)(c)–(e). None of Title III's disclosure limitations apply here.

Because the recordings are lawful under Section 2511(2)(c) and disclosure to the SEC was proper, Section 2515's exclusionary rule does not apply.[1]

### E. Failure to Disclosure Potential Witnesses

Defendants also argue that the Court should bar testimony from any FBI personnel because they were not disclosed as potential witnesses. (Doc. No. 110 at 11–13.) But as the SEC points out on reply, any testimony by an FBI agent would be limited to authenticating the recordings. (Doc. No. 117 at 16.) And courts in this Circuit routinely recognize that failure to disclose an authenticating witness is harmless. See, e.g., Lam v.

---

[1] Importantly, Defendants fail to cite to any authority in which evidence obtained in conformity with Section 2511(2)(c) was nevertheless excluded under Section 2515.

City & Cty. of San Francisco, 565 F. App'x 641, 643 (9th Cir. 2014); Zadoian v. Target Corp., 19:cv-00326-DSF, 2020 WL 3203145, at *2 (C.D. Cal. Apr. 14, 2020).  Moreover, and contrary to Defendants' allegations, there is no evidence in the record to suggest that the SEC has acted in bad faith.  Thus, the Court declines to preclude authenticating testimony by an FBI agent.

### F. Federal Rule of Evidence 403

Defendants next argue that the Court should exclude any reference to the FBI's investigation, including reference to the recordings as derived from that investigation, because it would be of limited probative value while being very prejudicial, would risk confusing the jury, and would result in the undue waste of the Court's time. (Doc. No. 110 at 13–15.)  After careful consideration of Defendants' arguments, the Court concludes that the probative value of reference to the FBI's investigation, including reference to the recordings as derived from that investigation, outweighs any risk of prejudice.  See Fed. R. Evid. 403.  Thus, the Court declines to exclude such evidence under Rule 403.

## II. CONCLUSION

For the foregoing reasons, the Court grants the SEC's motion in limine and admits the four recordings.  This ruling is without prejudice, and the parties may make valid contemporaneous objections at trial concerning the matters discussed in this order.  The Court reserves the right to change this ruling based on the testimony developed at trial.

IT IS SO ORDERED.

DATED: September 3, 2024

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT