**HOLMES, ATHEY, COWAN & MERMELSTEIN LLP**
Andrew B. Holmes (SBN: 185401)
abholmes@holmesathey.com
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017
Tel: (213) 985-2200
Fax: (213) 973-6282

Attorneys for Defendants
*William Clayton, and*
*Barry D. Reagh*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>     vs.<br><br>JOSEPH R. EARLE, JR., BARRY D. REAGH, WILLIAM CLAYTON, FRANCIS T. DUDLEY, STEVEN E. BRYANT, UPPER STREET MARKETING, INC. and PROJECT GROWTH INTERNATIONAL, INC.,<br><br>          Defendants. | Case No. 3:22-cv-1914-H-SBC<br><br>**DEFENDANTS WILLIAM CLAYTON'S AND BARRY D. REAGH'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Judge:         Hon. Marilyn L. Huff<br>Courtroom: 12A<br>FPTC:         October 27, 2025<br>Time:          10:30 a.m.<br>Ctrm:          12A<br>Judge:         Hon. Marilyn L. Huff<br><br>[EXHIBIT AND WITNESS LISTS FILED CONCURRENTLY] |

Pursuant to Local Rule 16.1f(2) and the Court's modified Scheduling Order (ECF No. 169), defendants William Clayton and Barry D. Reagh hereby submit the following Memorandum of Contentions of Fact and Law:

## I. SUMMARY OF PLAINTIFF'S CLAIMS AND THEIR SCOPE

Plaintiff's operative complaint is their Second Amended Complaint ("SAC", ECF 59). As relevant here, the First cause of action (against Clayton, but not Reagh) is for "Fraud in Connection with the Purchase or Sale of Securities" in violation of § 10(b) of the Exchange Act and Rule 10b-5(a), (b), and (c) promulgated thereunder.

The Second cause of action (against Reagh only) is for "Fraud in Connection with the Purchase or Sale of Securities" in violation of § 10(b) of the Exchange Act and Rules 10b-5(a) and (c) promulgated thereunder.

The Third cause of action (naming Reagh and Clayton) is for "Fraud in the Offer or Sale of Securities" in violation of § 17(a) of the Securities Act.

### A. Legal Bases for the SEC's Causes of Action

The first and second causes of action stem from Rule 10b-5, which states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or[1]

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

The third cause of action is for violation of §17(a) of the Securities Act, which states:

It shall be unlawful for any person in the offer or sale of any securities […] by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or

---

[1] Of note, the SAC does not allege Reagh violated Rule 10b-5(b).

> indirectly--
>
> (1) to employ any device, scheme or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.[2]

Proof of the violation of §10(b) of the Exchange Act, Rule 10b-5(a), (b), and (c) thereunder, and §17(a)(1) of the Securities Act requires scienter. In the Ninth Circuit, "Scienter" is equated with knowing and/or deliberately reckless conduct. (*See* 9th Cir. *Manual of Model Civil Jury Instructions*, at 18.5).

Specific to Rule 10b-5(b), there is a requirement that the defendant "make" the relevant statement. A defendant "makes" a statement if the defendant is "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011).

"Reckless" means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it. (*Webb v. SolarCity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018) (scienter requires facts demonstrating an intent to deceive, manipulate or defraud, or "deliberate recklessness." The court defined "deliberate recklessness" as "an extreme departure from the standard of ordinary care.")

However, proof of violation of §17(a)(2) and §17(a)(3) of the Securities Act requires at least a showing of negligence. *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001).

---

[2] The SEC's memo of contentions of law and fact incorrectly broadens §17(a)(3) by using the phrase "…upon any persons" rather than the statutory language "…upon the purchaser."

## II. MATERIAL FACTUAL DEFENSES

### A. Clayton's Defenses

The sole factual claim against Clayton boils down to the SAC's allegation, in ¶ 126 (and essentially repeated in ¶ 134), that "Clayton made false and misleading statements in the DSR forms submitted to Broker A [Wilson Davis & Company] on behalf of Natal."[3]

However, since the DSR forms submitted by Clayton to Wilson Davis on behalf of Natal Holding, LLC ("Natal") were truthful, this is an absolute defense to the DSR-related claims.

To the extent the SEC relies on allegations of "coordinated sales" by Clayton with Reagh for its "scheme liability" theory, such allegations are wholly unsupported by any documentary or testamentary evidence, and have been debunked through testimony from the relevant non-party brokers who placed the buy/sell orders. The lack of direct evidence and/or testimony showing actual coordination, together with actual testimony disclaiming any such coordination is more than sufficient to defeat these claims.

### B. Reagh's Defenses

The facts underlying the SEC's claims against Reagh rest on allegations that he:

1) facilitated the submission of false and misleading DSRs to Wilson Davis & Company on behalf of Natal and F.A. Ventures (e.g., SAC ¶¶ 36 and 120);

2) organized and deployed the touting and promotional campaign designed to drive up UPPR's stock price and trading volume (e.g., SAC ¶ 130); and

3) coordinated the sales (or dumping) of UPPR shares he owned and controlled both during and after the promotional campaign (e.g., SAC ¶ 130).

Reagh's defenses rest largely on the fact that he:

1) never facilitated the submission of any false DSRs relating to Natal (because, *inter alia*, the Natal submissions made by Clayton were truthful);

2) never facilitated the submission of any false DSRs relating to F.A. Ventures (because, *inter alia*, the F.A. Ventures submissions made by non-party Don

---

[3] Here, DSR means a "deposit security request."

Reagh were truthful);

3) did not engage in any improper touting/promotional campaign "designed to drive up UPPR's stock price and trading volume"; and

4) did not improperly coordinate any sales of UPPR stock he owned or controlled.

### III. SUMMARY OF DEFENDANT'S AFFIRMATIVE DEFENSES

Primarily, Defendants rely on each of their Second Affirmative Defenses:[4]

> Plaintiff's claims are barred, in whole or in part, because Defendant acted in good faith at all material times and in conformity with all applicable federal statues, including the Securities Act and Exchange Act, and all applicable rules and regulations promulgated thereunder.

This "good faith" defense mitigates and/or eliminates scienter. Defendants' good faith is at least partially premised on the fact that they were entitled to reasonably rely on others more expert than they in their relevant fields. For example: "a director may reasonably rely on portions of a prospectus which are outside his field and which are based on the expertise of other persons." *Blakely v. Lisac*, 357 F.Supp. 255, 265 (D.Or. 1972) (citing *Escott v. BarChris Constr. Corp.*, 283 F.Supp. 643 (S.D.N.Y. 1968)); *see also* Cal. Corps. Code § 309(a) ("A director shall perform the duties of a director […] in good faith, […] and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances"); and Cal. Corps. Code § 309(b)(2) (director may rely on the expertise of "[c]ounsel, independent accountants or other persons as to matters which the director believes to be within such person's professional or expert competence.") This is exactly the sort of thing Clayton did when he (through Natal) relied on attorney Morgan Petitti (who drafted the opinion letters contained in the DSR packages) to properly do her job, and similarly relied on Wilson Davis (the brokerage to whom the DSRs were sent) to analyze the DSRs and to seek further information if there were any questions or concerns related to them.

---

[4] Reagh and Clayton filed separate answers to the SAC (ECF 68 and 69), and each asserted affirmative defenses (ECF 68, pp. 19-20; ECF 69, p. 17). The second affirmative defenses in each Answer are the same.

## IV. THE SEC'S REMEDIES ARE NOT APPROPRIATE

The SAC seeks the full panoply of remedies against both Reach and Clayton. First, no remedies whatsoever should be ordered, since the SEC will not prevail against either defendant on any cause of action in the SAC.

In an abundance of caution, Reach and Clayton offer the following:

Permanent "obey the law injunctions" are inappropriate here, where there will be no showing of the likelihood of future violations of the securities laws, the amount of scienter is extraordinarily low, and with regard to Clayton in particular, he is not participating in the securities industry. *SEC v. Murphy*, 50 F.4th 832 (9th Cir. 2022); *SEC v. Fehn*, 97 F.3d 1276 (9th Cir. 1996). For the same reasons, civil penalties are not appropriate here. *Murphy*, 50 F.4th 832. And, to the extent any disgorgement is ordered, it should be net of all related expenses. *Liu v. SEC*, 591 U.S. 71 (2020).

The ancillary bars are also largely inappropriate, here. For example, permanent officer and director bars are regularly rejected, instead limiting such bars to a shorter duration or declining to enter them altogether. *SEC v. Panuwat*, 3:21-CV-6322, 2024 WL 4602708, at *17–28 (N.D. Cal. Sept. 9, 2024) (declining to enter any officer and director bar, finding low likelihood of recidivism); *SEC v. E-Smart Techs., Inc.*, 139 F.Supp.3d 170 (D.D.C. 2015)) (imposing ten-year bar for one defendant and a five-year bar for another, despite SEC's request for a lifetime ban, where defendants were not repeat offenders); *SEC v. Findley*, 718 F.Supp.3d 125 (D. Conn. 2024) (imposing four-year bar rather than permanent bar). And the same logic applies to penny stock bars. See, e.g., *SEC v. Abellan*, 674 F. Supp. 2d 1213, 1223 (W.D. Wash. 2009).

## V. ANTICIPATED EVIDENTIARY ISSUES

Defendants anticipate only the standard evidentiary issues to present at trial, predominantly those regarding relevance and hearsay.

It may also be reasonable and/or necessary to call certain witnesses by video (rather than in person).

Dated: August 25, 2025

Respectfully submitted,

   */s/ Andrew B. Holmes*
ANDREW B. HOLMES
HOLMES, ATHEY, COWAN & MERMELSTEIN LLP
Attorneys for Defendants Barry D. Reagh and William Clayton

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, I caused to be electronically filed the foregoing document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail, electronic mail, or by other means permitted by the Court rules.

By:   */s/ Andrew B. Holmes*
      Andrew B. Holmes